Miller, J.
We do not find by the appellants’ abstract of the record that any exception was taken at the time to the giving of the instruction complained of, and, therefore, we will not pass upon it.
The overruling of plaintiffs’ motion for a new trial was duly excepted to, and we are clearly of opinion that the ruling was erroneous. There was no sufficient evidence to sustain either the general or special findings of the jury.
In the special verdict the jury find, first, that the defendants did not sign and deliver the note in question.
In the first place the signatwres were not denied under oath. They deny having “ knowledge or information sufficient to form a belief whether they executed the note sued on or not.” Under section 2961 of the Revision of 1860, a party was required to deny under oath the execution of a written instrument sued on, in order to put the other party on proof of its execution; that section, however, was repealed by the act of March 10, 1862, which “enacts that the signature thereto, or any indorsement thereon (when suit is brought on a written instrument), shall be deemed genuine and admitted, unless the party whose signature it purports to be shall deny the same (the *377 signature) under oath.” So that there must be a specific denial of the signature, or under the statute it “ shall be deemed genuine and admitted.”
Again, the defendants do not deny their signatures to the note, when called as witnesses. Metcalf says: “ That is my signature, but I did not know that I was signing a note.” Fuller says: “ Did not know it was a note when I signed it; don’t know that I did sign it; the signature looks like mine.” Here we have the direct admission of one, and the implied admission of the other defendant, to the genuineness of their signatures. Each swears, however, that he did not know it was a note when he signed it; and they also swear to other facts, which leave little room for doubt that their signatures were obtained by fraud. This, however, is no defense to an action on the note by a Iona fide holder for value. Before the fraud can be made available against the plaintiffs, it must be shown, either that they took the note after maturity, or with notice of the fraud. Kelly v. Ford, 4 Iowa, 144, and cases there cited.
The court so instructed the jury, and the jury found, as we think, against the evidence, that the plaintiffs had knowledge of the fraud, and that they were not the owners of the note before it became due.
The only evidence tending to show that plaintiffs were not the owners of the note until after maturity is that of Metcalf, who testifies that Leroy told him, after the note was due, that it belonged to Johnson. This is disproved by the testimony of the plaintiffs and their clerk, Harvey, establishing the fact that they were the owners of the note before maturity; and the defendant, Metcalf, admitted that before the maturity of the note, he received a notice from, the plaintiffs that it would soon he due.
The third finding of the jury, that plaintiffs had knowledge of the fraud when they took the note, is entirely unsupported by any evidence whatever.
*378 Both the general and special verdicts are so palpably against the evidence given on the trial that the judgment must be
Reversed.