## CUTTER v. FANNING.

Section 2390 of the Code, which provides, that a person who has a direct, certain, and legal interest in the suit, is not a competent witness, unless called on by the opposite party, is but declaratory of the rule stated conversely in the books, that a person is competent, unless he has such an interest.

The preceding section, which provides, that facts which have heretofore caused the exclusion of testimony, may still be shown, for the purpose of lessening its credibility, also recognizes another rule before settled, that there must be some clear and adequate reason for the exclusion of testimony, otherwise it will be received, and the credibility of the witnesses left to the jury.

The *true test of interest* is, that the witness will either lose or gain by the di-

Cutter v. Fanning.

rect legal operation and effect of the judgment, or that the record will be legal evidence for or against him, in some other action.

If the interest is of a doubtful nature, the objection goes to the credit of the witness, and not to his competency.

Where it is not clear that a witness is incompetent for all purposes, the better practice is, to let him be sworn, and raise the question as to his competency when an improper question is asked.

The object of the law is to exclude improper evidence; and, as a general rule, this can be done with more certainty, when the objection is made to improper questions, and this shown by exceptions, taken at the time.

Where the witness is incompetent for all purposes, the objection should be raised before he is sworn.

Where in an action for the conversion of certain sheep, the defendant called a witness, who testified that one R. F. was a partner of defendant, and joint owner of the flock of sheep, which was being driven by defendant (with which it was alleged that the plaintiff's were mixed and driven off); that they were in partnership as to certain farms in Ohio; and that he had heard defendant say, that all the sheep in the flock were his; and where the defendant then called the said R. F. as a witness, to whose examination the plaintiff objected, for the reason that the testimony of the former witness, showed the said R. F. to be so far interested as to render him incompetent, which objection was sustained by the court, without examining the said R. F. on his *voire dire*, and the witness excluded; *Held*, That the court erred in excluding the testimony of the witness.

Instructions not excepted to in the court below and embodied in a bill of exceptions, cannot be reviewed by the appellate court.

Where the errors assigned have no reference to the instructions, the appellate court will not notice the instructions.

An instruction, abstractly correct, if not applicable to the case, may properly be refused.

To show the applicability of an instruction which has been refused, the appellant should bring up, in a proper manner, the testimony on which he relies to show its applicability.

Where instructions are asked, which are given with qualifications by the court, the party asking the instructions, must object to their qualification, and deny the right of the judge thus to qualify them, at the time, or else he cannot deny such right in the appellate court.

To maintain an action for the conversion of property, there must be property in the plaintiff, and also a right to the possession, at the time of the conversion.

There must, also, be a conversion of the thing by the defendant, to his own use.

It is not material whether the defendant came to the possession originally, by right, or by wrong; and the conversion may be either direct or constructive.

Where the circumstances, of themselves, do not amount to an actual conversion,

it will be incumbent on the plaintiff, to give evidence of a demand and refusal, prior to the commencement of his action.

The demand may be either of the chattel itself, or its value.

The value of the property, at the time of the conversion, with interest, is the measure of damages, where there is no claim for special damages.

The refusal to comply with a demand, where the plaintiff requires a much larger sum than is his right, is not conclusive evidence of a conversion. The effect of such refusal, must depend upon the manner of the refusal, and the attendant circumstances.

If the defendant makes no objection to the amount demanded, and does not place his refusal to pay on that ground; or does not himself offer to pay anything, the jury may conclude that the demand and refusal, are sufficient.

An offer to return property, at a distance from where it was taken, will not bar an action for the conversion.

### Appeal from the Scott District Court.

THIS action is brought to recover the value of eighty sheep, which plaintiff alleges belonged to him, and which defendant converted to his own use. It appears that defendant was driving sheep from Ohio to Iowa, and when near Joliet, in Illinois (as plaintiff alleges), plaintiff's sheep got into the drove, and were driven by defendant to Davenport, in this state, at which place they were demanded, but not returned. All material allegations of the petition, are denied in the answer. The issue being fully made, there was a trial by jury; verdict for plaintiff, the usual motions for a new trial, and in arrest of judgment, which were overruled; and judgment on the verdict, and defendant appeals.

In the progress of the trial, as shown by the bill of exceptions, the defendant called on one Parkhurst as a witness, who testified, "that the defendant was driving a flock of sheep from Ohio, through Illinois; at or near Joliet, certain sheep became mixed with defendant's flock, and that defendant, with his hands, immediately, or as soon after as possible, separated such stray sheep from the flock, and drove them back towards the place whence they came." He also testified, that one Richard Fanning, of Ohio, and who was in Ohio when the mixing of the sheep took place, was a partner of defendant, and joint owner of the flock of sheep, which was being driven by defendant, and that they were in partner-

ship as to certain farms in Ohio; and that he heard John
Fanning say, that all the sheep in the flock at Davenport
were his. The defendant's counsel then called the said
Richard Fanning, as a witness, and to his examination
counsel objected, for the reason that the testimony of Park-
hurst, showed the said Richard to be so far interested, as to
render him incompetent. The said Richard was not examined
on his *voire dire*, and upon the proof made by the testimony
of Parkhurst, the said witness was not allowed to testify.
Certain instructions of defendant were refused, and will be
found referred to in the opinion, as also those given at the
request of plaintiff, to which objections are urged.

*Corbin & Dow*, for the appellant.

*Cook & Dillon*, for the appellee.

WRIGHT, C. J.—It is first claimed, that the court erred in
excluding the testimony of the witness, Fanning. The Code,
section 2390, in providing that a person who has a direct, cer-
tain, and legal interest in the suit, is not a competent witness,
unless called on by the opposite party, is but declaratory of the
rule, stated conversely in the books, that a person is compe-
tent, unless he has such an interest. And the preceding
section, which provides that facts which have heretofore
caused the exclusion of testimony, may still be shown, for the
purpose of lessening its credibility, also recognizes another
rule before settled, that there must be some clear and ade-
quate reason for the exclusion of testimony, otherwise it will
be received, and the credibility of the witness, left to the
jury. The general rule is, that all persons may be witnesses.
One exception to the rule, well understood, is, that those in-
terested may not be witnesses. What this interest shall be,
in order to exclude, is stated in different terms, by various
writers and authorities.

In general, the witness is competent, unless he be inter-
ested in the event of the suit. *Bent* v. *Baker*, 3 Term R.
29. A witness, who has no interest in the event of the

cause, shall not be rejected as incompetent. *Jordaine* v. *Lashbrooke*, 7 Term, 601. If the witness will not gain or lose by the event of the cause, and if the verdict cannot be given in evidence for or against him, the objection is to his credit, and not to his competency. *Van Ness* v. *Leshane*, 3 Johns. Cases, 32. If he be not implicated in the legal consequences of the judgment, the witness is competent, so far as relates to the question of interest; and by legal consequences, are meant those which are fixed, certain, and actual, and by which an advantage, not depending on a contingency, is to be gained or lost—such, for instance, as being able to give the verdict in evidence, on the one hand, or being subjected to an incumbrance or duty, on the other. *Bennett* v. *Hethington*, 16 Serg. & R. 195 ; *Bliss* v. *Thompson*, 4 Mass. 448. A witness, who has a legal interest in the subject matter, for the recovery of which the suit is brought, or who will gain or lose by its event, is necessarily incompetent to give evidence in favor of that side of the issue on which his interest lies. *Athey* v. *McHenry*, 6 B. Mon. 50; *Stebbins* v. *Sackett*, 5 Conn. 278. The interest, in order to disqualify, must be legally certain, and not merely possible or probable. *Gebhard* v. *Schindle*, 15 S. & R. 239; *Nicholson* v. *Frazier*, 4 Harrington, 206. The mere expectation of benefit, or apprehension of loss, from the event of the suit, or the strongest bias, will not exclude ; but the witness must have an actual interest, which, however trivial, will render him incompetent. *Dean* v. *Speakman*, 7 Blackford, 317 ; *Bridges* v. *Armour*, 5 How. 91; *Grove* v. *Brien*, 8 How. 249 ; *Rollins* v. *Faber*, 25 Maine, 144. Mere interest in the question at issue between the parties, will not disqualify. *Branch* v. *Doane*, 17 Conn. 402; *Stewart* v. *Conner*, 9 Ala. 803. The true test of interest is, that the witness will either lose or gain by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him, in some other action. 1 Greenleaf Ev. § 390. These references sufficiently state, the character of interest which will render the witness incompetent. As already stated, there is another rule recognized by our Code, which is, in like

manner, stated in different forms by the authorities, but still a rule generally acted upon, and of great importance in the trial of causes. We refer to the rule stated in *Shipton* v. *Thornton*, 9 A. & E. 327, in these words: "As objections, on the score of interest, are not to be favored, the safe rule is, to admit the witness, whenever there is doubt on the fact. It is then still open to the objection, to urge the same circumstances to the jury, as proper to lessen the credit of the witness with them." And again, in the language of the note to *Bent* v. *Baker*, 2 Smith's Lead. Cas. 77, " Courts have evinced a laudable desire to let in truth, wherever precedent will admit it, by holding objections to apply, rather to the credit, than the competency." See, also, *Draper* v. *The Norwich & Worcester R. R. Co.*, 11 Metc. 505. If the interest is of a doubtful nature, the objection goes to the credit of the witness, and not to his competency. 1 Greenleaf Ev. § 390.

Having thus stated some of the general rules touching the competency of witnesses, let us briefly apply them to the case before us. And while we recognize the rule, that it is the duty of the court to judge of the competency of the witness, as it is of the jury to judge of his credibility, after his testimony is before them ; yet we think that in this case, the court below might well have admitted this testimony, without violating any rule, for the reason that the testimony of Parkhurst, leaves it somewhat doubtful, whether the witness, Fanning, had an interest in the sheep driven from Ohio ; and where there is doubt, as already shown, the testimony should be received, and its credibility judged by the jury. But without putting the decision of the question upon this ground, we will assume that he had an interest in the Ohio flock, and yet we think the witness competent· In the first place, let us ask, would the record in this case be legal evidence against the witness, in any other action ? If so, upon what principle ? In the determination of this, and all other questions, we must necessarily have reference to the relations of the parties, and the circumstances under which such questions arise. The defendant and witness

were partners, and this partnership extended to the sheep which were driven from Ohio to Iowa. In the discharge of that duty, the defendant was the agent of the partnership. But he was not the agent of the partnership to commit a tort, or wrongful act. The commission of a tort, was not within the proper scope and business of the partnership undertaking —was not authorized or adopted by the other partners, and under no other circumstances, can we conceive that the partnership would be bound by his tortious acts. Story on Part., § 168. Suppose, then, that plaintiff recovers in this action, and the defendant should seek to have his brother (the witness) contribute to its payment. There is no principle, certainly, upon which he would be liable. The record of the recovery would not be evidence, because the witness is neither a party or privy to it, and was in no manner connected with the immediate act or circumstance which created the liability. Or suppose, again, that the defendant, in the event of a recovery against him, when accounting for the proceeds of the flock of sheep, should claim to deduct the costs and expenses of the litigation, or the amount of the judgment recovered. He would have no legal right to do so, any more than he would the costs and expenses for defending himself against the charge of stealing a horse, while driving these sheep to Iowa. The partner might allow such payment, in the final accounting, from honorable motives, or otherwise, but as he would be under no legal obligation to do so, mere honorable considerations could not exclude him as a witness.

Let us reverse the case, and suppose that plaintiff is defeated in his action, and defendant thereby, as is assumed, is found to have eighty or a hundred head of sheep more than he started with, or the firm owned. Does it therefore necessarily follow, that the record in the case would be evidence to show that witness was entitled to the benefit of such excess? Could not the defendant fully answer to that claim, that he was intrusted by the firm with a thousand head of sheep, and if he by a wrongful act, got more, it was a matter of no consequence to the firm? How could the firm claim

a benefit from an act, for which it could in no manner be responsible—which it no way authorized or adopted—and which was in no manner within the scope of the partnership business? The charge is, that the defendant wrongfully converted to his own use, certain sheep. For that act, he is alone responsible. And the fact that he had charge of other sheep, at the time of the conversion, which belonged to himself and another person, cannot possibly change the character of that act, any more than if he had wrongfully taken cows or horses. The question is not, whether plaintiff owns part of the sheep which were intrusted to defendant by the firm, but whether defendant did or did not take plaintiff's sheep.

Again: could this witness either gain or lose by the direct, legal effect and operation of the judgment in this case? What we have already said on the other branch of the inquiry, perhaps sufficiently answers this. Indeed, it is somewhat difficult to separate the one from the other, in the consideration of questions of competency. We will only add a brief reference to cases, which we think sustain the competency of the testimony. It is conceded in the argument, that if A. is charged with having wrongfully converted the property of B. to his own use, C. would be a competent witness for A., to prove that he (C.) owned and had a right to the possession of the disputed property, and such is certainly the rule. *Bush* v. *Lyon et al.*, 9 Cowen, 52; Stark. Ev. 1508; *Ward* v. *Wilkinson*, 4 B. & A. 410. And what is the reason of the rule? Because, in the language of the case from 9 Cow. 52, as between the witness and the plaintiff, or the witness and the defendant, the verdict which is obtained upon this testimony, will be of no avail to him. Suppose, instead of this defendant, one of the hands, or defendant's employee, had been charged, and sued for the value of these sheep (and if it was a wrongful act, and such hands participated therein, then they might be held responsible, for they could plead no authority from the defendant in justification). In such suit, would not this defendant, as well as this witness, have been competent witnesses to prove prop-

erty in themselves, and thereby have defeated this action? They certainly would, according to the rule as admitted by counsel for appellee, and shown by the above authorities. Why is the rule different, then (upon the supposition that the object of the proposed testimony was to show property in the witness and the defendant), because the alleged wrongdoer was a partner of the witness at the time of the act? If he would be competent to prove that he owned the whole property, why not to prove that he owned a part of it? · Further, the doctrine is well settled, that if two or more are sued in tort, and the plaintiff fails to make out his case against any one, a verdict may be taken in his favor at once, and his testimony received in behalf of the others. *Van Deusen* v. *Van Slyck*, 15 John. 223 ; *Moon* v. *Eldred*, 3 Hill, 104; *Walworth* v. *Mountford*, 4 Wash. C. C. 79; *Wakely* v. *Hart*, 6 Binney, 319.

Then, if in this case, the witness, with the brother (now defendant), had been jointly charged with this tort, and had been discharged, for want of testimony to show his liability, would he be incompetent, because he owned, jointly with his co-defendant, a flock of other sheep, with which it was said the sheep of the plaintiff had mixed, and been driven off, by the remaining defendant's wrongful act? If not, how is he less competent, in a case to which he was never a party?

We then dismiss this part of the case, only remarking, that the fact that defendant, at the time of the supposed wrongful taking, had sheep belonging to himself and the witness, is the cause of all the doubt and difficulty which apparently surround this question. So soon as that circumstance is out of view, the question is easily settled, and, as already stated, we cannot say why that fact should, in the least, change the competency of the witness. And we also add another thought. Where it is not clear that a witness is incompetent for all purposes, the better practice is, to let him be sworn, and raise the question as to his competency, when an improper question is asked. The object of the law is, to exclude improper evidence, and, as a general rule, this can

Cutter v. Fanning.

be done with more certainty, when the objection is made to improper questions, and this shown by exceptions taken.  If, however, the witness is incompetent for all purposes, the objection may well be taken before he is sworn.  *Beal* v. *Finch et al.*, 1 Kernan, 128.

This case must be reversed, for the reason that the court below erred in excluding this testimony.  As a general rule, we would not decide more than was necessary to dispose of the case.  A new trial being ordered, however, we proceed to notice briefly the instructions which are complained of by appellant.  It is next urged, that the court erred in giving certain instructions asked by plaintiff.  These instructions are not before us, however, in such a manner as that defendant's objection, if well taken, can avail him.  In the first place, the instructions were not objected to, and embodied in a bill of exceptions ; and in the next place, the errors assigned have no reference to such instructions.  Under such circumstances, we cannot notice them.

The defendant asked the court to instruct the jury, that this was an action of trover, which was refused, and this refusal is assigned for error.  We do not see how the giving, or refusing to give, this instruction, could prejudice either party.  Under the old practice, this certainly was an action of trover.  And while the court, with propriety, might have so stated, yet to refuse to do so, was certainly not such an error as could reasonably have misled the jury.  One instruction asked by the defendant was refused, for the reason (as stated by the judge in the bill of exceptions), that it was not applicable.  The testimony is not before us, and we are, therefore, bound to presume that the instruction was properly refused.  An instruction abstractly correct, if not applicable to the case, may properly be refused.  If appellant would show this court the applicability of such an instruction, he should bring before us, in the proper manner, the testimony upon which he relies, to show its applicability.  *Pittman* v. *Gatz et al.*, 5 Gilm. 186 ; *Hamilton* v. *Hunt*, 14 Ill. 472 ; *Baxter* v. *The People*, 3 Gilm. 381 ; *Eyser* v. *Weissgerber*, 2 Iowa, 463.  It is next objected, that the court re-

fused to give some of defendant's instructions, as asked, but gave them with certain qualifications—and the right to thus qualify, is denied. To this, it is sufficient to say, that no objection appears to have been made at the time, to the right of the court to thus qualify. It was the duty of the defendant to object to this course, at the time this qualification was added, before he can deny such right in this court. This view disposes of this objection, for this case. In thus disposing of it, however, we do not wish to be understood, as denying the right of the court to add qualifying words to instructions so asked. It is not necessary to decide that question, and we therefore intimate no opinion.

This case presents another instance of a great number of instructions given and refused, the applicability of many of which, is in no manner shown. To examine each of them at length, would unreasonably extend this opinion. We shall, therefore, content ourselves with briefly stating, what we understand to be the law, as applied to the state of the case, assumed by these instructions. To maintain this action, there must be property in the plaintiff, as also a right to the possession, at the time of conversion. And in the next place, there must be a conversion of the thing by the defendant, to his own use. It is not material, whether the defendant came to the possession originally, by right or wrong. 2 Greenleaf Ev. § 636. This conversion may be, either direct and constructive, and may arise, as stated by plaintiff's counsel (referring to 2 Saund. P. & E. 880), by the wrongful taking by—an illegal assumption of ownership—by the illegal use or misuse of the chattel—or by a wrongful detention. Where the circumstances of themselves, do not amount to an actual conversion, it will be incumbent on the plaintiff, to give evidence of a demand and refusal, prior to the commencement of his action. 2 Greenleaf Ev. 644. This demand may be either of the chattel itself, or its value. The value at the time of the conversion, with interest, is the measure of damages, where there is no claim for special damages. *Laplace* v. *Aupoix*, 1 Johns. Cases, 406; 2 Greenl. Ev. §§ 276, 649. The refusal to comply with a

demand, where the plaintiff requires a much larger sum than is his right, is not conclusive evidence of a conversion.

The effect of such refusal must depend upon the manner of the refusal, and the attendant circumstances. If the defendant makes no objection to the amount demanded, and does not place his refusal to pay on that ground, or does not himself offer to pay anything, the jury might well conclude the demand and refusal to be sufficient. If the plaintiff's sheep mixed with the defendant's drove, by the plaintiff's neglect, and the defendant did use due diligence in separating them, and could not succeed, he would not be liable, without a demand and refusal. If, however, he subsequently negatived the plaintiff's right to the property, or did any act which was inconsistent with such right, the conversion would be complete. The exercise of a dominion over the property, in exclusion or in defiance of the plaintiff's right, is in law a conversion. 6 Bac. Abr. 677; *Bristol* v. *Burt*, 7 Johns. 254. If the defendant did not know that the sheep of plaintiff had mixed with his, he would not be liable, without proof of a demand. But, though he may not have known it, at the time, if he subsequently knew it, and made no effort to separate them, the conversion would be wrongful. An offer to return the sheep at Davenport, or at any distance from plaintiff's residence, or from where the sheep were taken, would not bar the action. On this subject generally, see authorities above referred to, and also *Spoor* v. *Holland*, 8 Wend. 445; Story on Bailments, § 93; *Clark* v. *Whitaker*, 19 Conn. 319; *Pierce* v. *Benjamin*, 14 Pick. 356; *Kelsey* v. *Griswold*, 6 Barb. 436; *Wellington* v. *Wentworth*, 8 Metc. 548; *Mathews* v. *Menedger*, 2 McLean, 145.

Judgment reversed.